MTN
JOSH COLE AICKLEN
Nevada Bar No. 007254
    E-Mail: Josh.Aicklen@lewisbrisbois.com
BRANDON D. WRIGHT
Nevada Bar No. 013286
    E-Mail: Brandon.Wright@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
702.893.3383
FAX: 702.893.3789
Attorneys for Non-Party
TOTAL IMAGING SOLUTIONS, LLC

# UNITED STATED DISTRICT COURT

## SOUTHERN DISTRICT, NEVADA

E-IMAGEDATA CORPORATION,

             Plaintiff,

v.

DIGITAL CHECK CORP. d/b/a
ST IMAGING,

             Defendant.

Case No: 2:15-CV-658-RTR
Dept. No.:

NON-PARTY TOTAL IMAGING
SOLUTIONS, LLC'S. MOTION TO
QUASH SUBPOENA SEEKING
DOCUMENTS AND PMK DEPOSITION
OR, IN THE ALTERNATIVE, TO MODIFY
SUBPOENA'S SCOPE

        COMES NOW Non-Party TOTAL IMAGING SOLUTIONS, LLC., (hereinafter "TIS")

by and through its attorneys of record, Josh Cole Aicklen, Esq., and Brandon D. Wright,

Esq., of LEWIS BRISBOIS BISGARRD & SMITH, LLP, and hereby moves to quash

Plaintiff's subpoena seeking documents and TIS' Person Most Knowledgeable deposition

or, in the alterative, to modify the subpoena's scope.

/ / /

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1

1   This Motion is made and based upon the Memorandum of Points and Authorities
2   submitted herewith, the affidavit of Brandon Wright, Esq., the affidavit of Terri Currier, the
3   exhibits attached hereto, the pleadings and papers on file herein and in the underlying
4   litigation and any oral argument and evidence permitted by this Court at the hearing on
5   this Motion.

6       DATED this 25 day of July, 2016

7                                                   Respectfully submitted,

8                                                   LEWIS BRISBOIS BISGAARD & SMITH

9

10

11   By

12                                                  JOSH COLE AICKLEN
                                                    Nevada Bar No. 007254
13                                                  BRANDON D. WRIGHT
                                                    Nevada Bar No. 013286
14                                                  6385 S. Rainbow Boulevard, Suite 600
                                                    Las Vegas, Nevada 89118
15                                                  Tel. 702.893.3383
                                                    Attorneys for Non-Party
16                                                  TOTAL IMAGING SOLUTIONS, LLC.

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                    2

AFFIDAVIT OF BRANDON D. WRIGHT, ESQ., IN SUPPORT OF NON-PARTY TOTAL IMAGING SOLUTIONS, LLC'S. MOTION TO QUASH SUBPOENA SEEKING DOCUMENTS AND PMK DEPOSITION OR, IN THE ALTERNATIVE, TO MODIFY SUBPOENA'S SCOPE

STATE OF NEVADA    )
                   ) ss.
COUNTY OF CLARK    )

I, BRANDON D. WRIGHT, being first duly sworn, depose and say:

1.     I am an Associate at LEWIS BRISBOIS BISGAARD & SMITH LLP, and am duly licensed to practice law in the State of Nevada.  I am competent to testify to the matters set forth in this Affidavit, and will do so if called upon.

2.     I am an attorney representing Non-Party Total Imaging Solutions (TIS) as to E-IMAGEDATA CORPORATION'S (hereinafter "Plaintiff" or "E-IMAGEDATA) subpoena seeking TIS' production of documents and PMK'S deposition testimony arising from litigation between Plaintiff and DIGITAL CHECK CORP. d/b/a ST IMAGING (hereinafter "ST IMAGING") currently pending in United States District Court for the Eastern District of Wisconsin, Case Number 2:15-CV-658-RTR.

3.     I have knowledge of the matters contained herein except for those matters that are stated upon information and belief, of which I have reason to believe they are accurate.

A.  Background of the Parties in the Underlying Litigation[1]

4.     ST IMAGING manufactures technical equipment designed to read and "digitize" aging microfilm, books and other "hard documents" housed primarily by educational institutions, large private institutions, hospitals, etc.

/ / /

/ / /

---

[1] TIS and its counsel want it to be clear to the Court that they have no opinion on the veracity or the merits of E-IMAGEDATA and ST IMAGING'S Claims against each other.  TIS merely summarizes their competing contentions so the Court can understand the background of the Wisconsin case.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                              3

5.     ST IMAGING works with and relies on reselling companies (hereinafter "resellers") across the country to sell, service, maintain and upgrade ST IMAGING'S equipment and products.

6.     E-IMAGEDATA also manufactures technical equipment designed to read and "digitize" aging microfilm, books and other hard documents.  Upon information and belief, E-IMAGEDATA is ST IMAGING'S primary competitor, and these two companies products comprise the vast majority of the total market share in the microfilm reader industry.

7.     E-IMAGEDATA has sold its ScanPro product line to the public since 2003.[2]

8.     ST IMAGING'S ST ViewScan product line directly competes with E-IMAGEDATA ScanPro product line.

9.     E-IMAGEDATA advertises its ScanPro 3000 scanner as containing/utilizing a 26 Megapixel Camera.[3]   ST IMAGING considers E-IMAGEDATA "26 Megapixel Camera" claim to be false and misleading because E-IMAGEDATA uses a 6.6 megapixel camera/image sensor and employs a proprietary hardware/software process to enhance the image's resolution, rather than using a "true" 26 megapixel camera/image sensor.

10.     Upon information and belief, E-IMAGEDATA and ST IMAGING have placed competing bids with various public and private agencies/institutions throughout the years in order to sell their competing products.  E-IMAGEDATA has compared its ScanPro 3000's image quality against ST IMAGING'S ViewScan III image (the ViewScan III uses a 14.3 megapixel camera/image sensor) after employing E-IMAGEDATA'S proprietary hardware/software enhancement process to ST IMAGING'S ViewScan III's unenhanced image.

/ / /

---

[2] E-IMAGEDATA's ScanPro product line is an advance integrated desktop microfilm reader designed for public use.
[3] Megapixels represent the quantity of data a camera/camera's image sensor can collect.  Generally, the higher the number of megapixels, the better/clearer an image appears.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                                      4

11.     Upon information and belief, E-IMAGEDATA protested a bid awarded to ST IMAGING by the Department of the Interior, National Park Service (hereinafter "NPS") which required a scanner to have a 25 minimum megapixel camera/image sensor.

12.     Upon information and belief, E-IMAGEDATA and its resellers lodged a formal protest of the award with the U.S. Government Accountability Office ("GAO") alleging that E-IMAGEDATA'S ScanPro 3000 met the minimum megapixel requirement, claiming it had a 26 megapixel camera.

13.     Upon information and belief, the GAO rejected E-IMAGEDATA'S claim that its ScanPro 3000 had a 26 megapixel camera because E-IMAGEDATA "knew that the ordinary convention in the industry was to represent camera megapixels in terms of the camera sensor itself" excluding proprietary hardware/software enhancing techniques. See, GAO's decision, attached as **Exhibit A**.

14.     E-IMAGEDATA claims ST IMAGING provided false or misleading marketing materials regarding E-EMAGING'S ScanPro's 26 megapixel camera claim to its resellers for distribution to the general public.

15.     ST IMAGING contends, interalia, that their alleged statements and characterizations of E-IMAGEDATA 26 megapixel camera claims are proper; that E-IMAGEDATA'S 26 megapixel camera representations are false and misleading; and that E-IMAGEDATA has made false and disparaging statements about ST IMAGING.

16.     E-IMGING and ST IMAGING have filed claims and counter-claims against each other alleging violations of the Lanham Act (15 U.S.C. § 1125), claims of Common Law Unfair Competition, Deceptive Trade Practices and other causes of action, in the underlying litigation currently pending in the United States District Court for the Eastern District of Wisconsin, Case Number 2:15-CV-658-RTR.

B. Background Information About This Moving Non-Party

17.     TOTAL IMAGING SOLUTIONS, LLC., (TIS) is a reseller of ST IMAGING'S products.   The vast majority of TIS business comes from selling ST IMAGING'S ScanView line of products.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                5

18.     TIS was originally founded by Terri Currier and operated by Clifford and Terri Currier as a husband and wife team. See, Affidavit of Terri Currier, attached hereto as **Exhibit P.**

19.     Terri and Clifford Currier later employed their son (Travis Currier) as a 1099 independent contractor. Id. Travis works for TIS as an independent contractor in Southern California. Clifford and Terri worked for TIS primarily in Nevada and northern California. Id.

20.     Clifford and Terri shared in TIS' marketing and sales efforts throughout TIS' operation and expansion. Id.

21.     TIS' business address is 4525 Dean Martin Dr., Unit 1508, Las Vegas, Nevada 89103. This is reflected on both the California and Nevada Secretary of State's "entity information center." See, TIS Business Entity Detail for California, attached as **Exhibit B**; see also, TIS Business Entity Detail for Nevada, attached as **Exhibit C.**

22.     Travis is named as TIS' California "Registered Agent" while Terri is identified as TIS' Nevada "Registered Agent" and "Managing Officer." See, **Exhibits B and C.**

23.     Terri does not regularly conduct business, in person, within 100 miles of Costa Mesa, California.

24.     On Saturday, June 18, 2016 Clifford Currier suddenly and unexpectedly passed away. Clifford was 57 years old. See, Obituary of Clifford Currier, attached as **Exhibit D.**

25.     On Sunday, June 26, 2016, Clifford's family and friends attended his funeral in Las Vegas, Nevada. Id.

    C. Plaintiff's Subpoena to TIS for Documents and TIS' Person Most
       Knowledgeable Deposition

26.     On Tuesday, June 28, 2016, Plaintiff issued a subpoena seeking TIS' documents and commanding TIS' PMK deposition (thereinafter "the Subpoena"). See, Plaintiff's Subpoena seeking TIS' Documents and Commanding TIS' PMK deposition,



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

attached as **Exhibit E**.  The Subpoena contained a copy of a protection order (reciting boilerplate language) issued in the underlying litigation between E-IMAGEDATA and ST IMAGING.  See, Certification of Records and copy of Protection Order, attached as **Exhibit F**.

27.     Upon information and belief, the Subpoena was served on Travis Currier in Costa Mesa, California on Tuesday, July 5, 2016.

28.     Plaintiff's subpoena commanded TIS to produce a wide range of documents allegedly related to the underlying litigation.  Some examples are:

  a.  Produce any documents relating to the camera resolution of any ScanPro.

  b.  Produce any documents relating to the camera resolution of any ViewScan.

  c.  Produce all promotional materials and documents used by you that specifically references e-Image or any Scan Pro.

  d.  Produce documents relating to any sales made by TIS of any ViewScan since January 1, 2013.

  e.  Produce any documents relating to any customer praise of the ScanPro or ViewScan.

  f.   Produce any documents relating to e-Image's, ST Imaging's or any other entity's market share for sales of microfilm scanners.

  g.  Produce any documents relating to industry sales data of microfilm scanners.

See, **Exhibit E** at P. 8-9.[4]

29.     TIS estimates the Subpoena as it is currently phrased will require Terri Currier to review between 7,000 -10,000 pages of documentation covering matters that pre-date the events leading to the underlying litigation between E-IMAGEDATA and ST IMAGING.  Terri Currier estimates this intensive document search will take 30-40 hours to complete.  See, **Exhibit P**.

---

[4] The Requests for Production of Documents identified represent a small sample of Plaintiff's many improper document requests as discussed in more detail below.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

30.     Plaintiff's subpoena commanded TIS to produce the above documents (and many others) to US Legal Support, 575 Anton Boulevard, Suite 400, Costa Mesa, California, 92626, "no later than July 11, 2016." Id. at P. 1.  The Subpoena commanded TIS' PMK appear at the above address to be deposed on August 11, 2016, at 9:00 a.m.

31.     E-IMAGEDATA seeks to depose TIS' PMK on the following topics allegedly related to the underlying litigation between E-IMAGEDATA and ST IMAGING:

- Documents produced in response to this Subpoena;

- Communications with third parties regarding e-Image or e-Image's ScanPro product line;

- The market demand for products such as the ST ViewScan and the Scan Pro, and product features driving that demand;

- Communications with customers or potential costumers regarding St Imaging's ViewScan Products;

- The sales process associated with the sale of a ST ViewScan, including communications with customers, communication with ST Imaging, profit margins associated with the sale, costs associated with the sale and documents associated with the sale.[5]

See, **Exhibit E** at P 5-6.

32.     On July 8, 2016, TIS retained the undersigned counsel to represent them regarding the Subpoena's document production and PMK deposition.

33.     Rebecca Lindstrom, Esq., counsel for TIS located in Chicago and licensed in Wisconsin conducted numerous conversations with Plaintiff's counsel from July 8 to July 22, 2106 attempting to narrow the scope of the Subpoena.  See, Communications between TIS' counsel and Plaintiff's counsel, attached as **Exhibits G, H, I** and **J**.

34.     On July 21, 2016, TIS' counsel (Affiant) and Plaintiff's counsel conducted one last teleconference regarding the Subpoena's improper scope and TIS' PMK deposition. See, Communication between TIS' counsel and Plaintiff's counsel dated July 22, 2016, attached as **Exhibit K**. TIS' counsel **again** advised Plaintiff's counsel about the

---

[5] The above topics of examination reflect only few of the total topics Plaintiff seeks to examine TIS' PMK about.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   difficulty obtaining responsive documents given Clifford's sudden passing.  Id.  TIS

2   advised Plaintiff's counsel they would be willing to produce certain documents responsive

3   to the Subpoena provided TIS' counsel could redact customer information, potential

4   customer information, pricing information, profit information, etc.  Plaintiff rejected TIS'

5   counsel's proposal, but suggested a wiliness to grant TIS more time (without providing

6   any concrete dates) to respond to the Subpoena largely as issued.  Id.  TIS and Plaintiff's

7   counsel agreed they had reached impasse and judicial intervention was necessary.  Id.

8        35.    TIS' counsel documented the conversation with Plaintiff's counsel and e-

9   mailed Plaintiff's counsel a brief recitation of their conversation.  Id.  Plaintiff's counsel

10  disagreed with TIS' counsel characterization of their conversation.  See, Communication

11  between TIS' counsel and Plaintiff's counsel dated July 21, 2016 attached as **Exhibit L.**

12  Plaintiff's counsel advised for the first time that they would be willing to grant TIS' counsel

13  an extension for the document production and the PMK deposition until November.

14  Plaintiff's counsel also advised TIS' counsel that Plaintiff was not seeking customer lists,

15  only customer and sales information that fell within the scope of the Subpoena.  Plaintiff's

16  counsel also offered to consider adding language to the protective order in the underlying

17  litigation for TIS' protection.  Id.

18       36.    TIS' counsel responded to Plaintiff's "re-characterization" of their

19  communication a few hours later.  TIS's counsel noted that Plaintiff's counsel's last

20  communication was Plaintiff's counsel first suggestion that TIS' counsel could have until

21  November to produce documents before responding to the Subpoena and giving

22  deposition testimony.  See, Communication between TIS' counsel and Plaintiff's counsel

23  dated July 21, 2016 attached as **Exhibit M.**  TIS' counsel also advised Plaintiff's counsel

24  that if TIS provided un-redacted customer information/potential customer information, E-

25  IMAGEDATA (TIS' competitor) would be able to "recreate" TIS' confidential

26  customer/pricing/profit information.  TIS' counsel advised Plaintiff's counsel that Plaintiff's

27  wiliness to provide additional protective order language did not address these problems in

28  Plaintiff's Subpoena.  Lastly, TIS' counsel advised Plaintiff's counsel that Plaintiff's refusal

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                    9

1  to narrow the scope of the Subpoena necessitated judicial intervention on a number of

2  issues beyond just trade secret concerns.  Id.

3       37.    Upon information and belief, Plaintiff has issued the Subpoena at issue (or a

4  subpoena substantially similar to the one at issue) to three (3) other ST IMAGING

5  resellers since the underlying case filing.

6       38.    Attached hereto as **Exhibit A** is a true and correct copy of GAO's decision.

7       39.    Attached hereto as **Exhibit B** is a true and correct copy of TIS Business

8  Entity Details for California.

9       40.    Attached hereto as **Exhibit C** is a true and correct copy of TIS Business

10  Entity Details for Nevada.

11       41.    Attached hereto as **Exhibit D** is a true and correct copy of Obituary of

12  Clifford Currier.

13       42.    Attached hereto as **Exhibit E** is a true and correct copy of Plaintiff's

14  Subpoena seeking TIS' documents and commanding TIS' PMK deposition.

15       43.    Attached hereto as **Exhibit F** is a true and correct copy of Certification of

16  Records and copy of a Protection Order.

17       44.    Attached hereto as **Exhibit G** is a true and correct copy of the

18  Communication between TIS' counsel and Plaintiff's counsel dated July 8, 2016.

19       45.    Attached hereto as **Exhibit H** is a true and correct copy of the

20  Communication between TIS' counsel and Plaintiff's counsel dated July 21, 2016.

21       46.    Attached hereto as **Exhibit I** is a true and correct copy of the

22  Communication between TIS' counsel and Plaintiff's counsel dated July 18, 2016.

23       47.    Attached hereto as **Exhibit J** is a true and correct copy of the

24  Communication between TIS's counsel and Plaintiff's Counsel dated July 21, 2016.

25       48.    Attached hereto as **Exhibit K** is a true and correct copy of the

26  Communication between TIS' counsel and Plaintiff's counsel dated July 22, 2016.

27       49.    Attached hereto as **Exhibit L** is a true and correct copy of the

28  Communication between TIS's counsel and Plaintiff's counsel dated July 22, 2016.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1

1     50.    Attached hereto as **Exhibit M** is a true and correct copy of the

2 Communication between TIS' counsel and Plaintiff's counsel dated July 22, 2016.

3     51.    Attached hereto as **Exhibit N** is a true and correct copy of E-IMAGEDATA'S

4 Second Amended Complaint against ST IMAGING.

5     52.    Attached hereto as **Exhibit O** is a true and correct copy of ST IMAGING'S

6 First Amended Counter-Claim against E-IMAGEDATA.

7     53.    Attached hereto as **Exhibit P** is a true and correct copy of the Affidavit of

8 Terri Currier dated July 25, 2016.

9 FURTHER AFFIANT SAYETH NAUGHT.

10     DATED this 25 day of July, 2016.

11

12                                      BRANDON D. WRIGHT, ESQ.

13

14 SUBSCRIBED AND SWORN to before me

15 this 25th day of July, 2016.

16 
NOTARY PUBLIC in and for said

17 County and State

                           **PEGGY KURILLA**
                        Notary Public, State of Nevada
                        Appointment No. 03-83150-1
                        My Appt. Expires June 22, 2019

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1

## MEMORANDUM OF POINTS AND AUTHORITIES

I.     INTRODUCTION

A. Background of the Parties in the Underlying Litigation

ST IMAGING manufactures technical equipment designed to read and "digitize" aging microfilm, books and other "hard documents" housed primarily by educational institutions, large private institutions, hospitals, etc.  ST IMAGING works with and relies on reselling companies (hereinafter "resellers") across the country to sell, service, maintain and upgrade ST IMAGING'S equipment and products.  E-IMAGEDATA also manufactures technical equipment designed to read and "digitize" aging microfilm, books and other hard documents.  E-IMAGEDATA is ST IMAGING'S primary competitor, and these two companies products comprise the vast majority of the total market share in the microfilm reader industry.

E-IMAGEDATA has sold its ScanPro product line to the public since 2003. ST IMAGING'S ST ViewScan product line directly competes with E-IMAGEDATA ScanPro product line. E-IMAGEDATA advertises its ScanPro 3000 scanner as containing/utilizing a 26 Megapixel Camera.  ST IMAGING considers E-IMAGEDATA "26 Megapixel Camera" claim to be false and misleading because E-IMAGEDATA uses a 6.6 megapixel camera/image sensor and employs a proprietary hardware/software process to enhance the image's resolution, rather than using a "true" 26 megapixel camera/image sensor.

E-IMAGEDATA and ST IMAGING have placed competing bids with various public and private agencies/institutions throughout the years in order to sell their competing products.  E-IMAGEDATA has compared its ScanPro 3000's image quality against ST IMAGING'S ViewScan III image (the ViewScan III uses a 14.3 megapixel camera/image sensor) after employing E-IMAGEDATA'S proprietary hardware/software enhancement process to ST IMAGING'S ViewScan III's unenhanced image.

/ / /

/ / /


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    E-IMAGEDATA protested a bid awarded to ST IMAGING by the Department of the
2    Interior, National Park Service (hereinafter "NPS") which required a scanner to have a 25
3    minimum megapixel camera/image sensor.  E-IMAGEDATA and its resellers lodged a
4    formal protest of the award with the U.S. Government Accountability Office ("GAO")
5    alleging that E-IMAGEDATA'S ScanPro 3000 met the minimum megapixel requirement,
6    claiming it had a 26 megapixel camera.  The GAO rejected E-IMAGEDATA'S claim that
7    its ScanPro 3000 had a 26 megapixel camera because E-IMAGEDATA "knew that the
8    ordinary convention in the industry was to represent camera megapixels in terms of the
9    camera sensor itself" excluding proprietary hardware/software enhancing techniques.
10   See, **Exhibit A.**

11   E-IMAGEDATA claims ST IMAGING provided false or misleading marketing
12   materials regarding E-EMAGEDATA ScanPro's 26 megapixel camera claim to its
13   resellers for distribution to the general public.  ST IMAGING contends, interalia, that their
14   alleged statements and characterizations of E-IMAGEDATA 26 megapixel camera claims
15   are proper; that E-IMAGEDATA'S 26 megapixel camera representations are false and
16   misleading; and that E-IMAGEDATA has made false and disparaging statements about
17   ST IMAGING.  E-IMGING and ST IMAGING have filed claims and counter-claims against
18   each other alleging violations of the Lanham Act (15 U.S.C. § 1125), claims of Common
19   Law Unfair Competition, Deceptive Trade Practices and other causes of action, in the
20   underlying litigation currently pending in the United States District Court for the Eastern
21   District of Wisconsin, Case Number 2:15-CV-658-RTR.

22          B. Background Information About This Moving Non-Party

23   TOTAL IMAGING SOLUTIONS, LLC., (TIS) is a reseller of ST IMAGING'S
24   products.   The vast majority of TIS business comes from selling ST IMAGING'S
25   ScanView line of products.  TIS was originally founded by Terri Currier and operated by
26   Clifford and Terri Currier as a husband and wife team. See, **Exhibit P.**  Terri and Clifford
27   Currier later employed their son (Travis Currier) as a 1099 independent contractor.  Id.
28   Travis works for TIS as an independent contractor in Southern California.  Clifford and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Terri worked for TIS primarily in Nevada and northern California. Id. Clifford and Terri shared in TIS' marketing and sales efforts throughout TIS' operation and expansion. Id. TIS' business address is 4525 Dean Martin Dr., Unit 1508, Las Vegas, Nevada 89103. This is reflected on both the California and Nevada Secretary of State's "entity information center." See, **Exhibits B** and **C**. Travis is named as TIS' California "Registered Agent" while Terri is identified as TIS' Nevada "Registered Agent" and "Managing Officer." Id. Terri does not regularly conduct business, in person, within 100 miles of Costa Mesa, California.   On Saturday, June 18, 2016 Clifford Currier suddenly and unexpectedly passed away. Clifford was 57 years old. See, **Exhibit D**. On Sunday, June 26, 2016, Clifford's family and friends attended his funeral in Las Vegas, Nevada. Id.

### C. Plaintiff's Subpoena to TIS for Documents and TIS' Person Most Knowledgeable Deposition

On Tuesday, June 28, 2016, Plaintiff issued a subpoena seeking TIS' documents and commanding TIS' PMK deposition (thereinafter "the Subpoena"). See, **Exhibit E**. The Subpoena contained a copy of a protection order (reciting boilerplate language) issued in the underlying litigation between E-IMAGEDATA and ST IMAGING. See, **Exhibit F**. The Subpoena was served on Travis Currier in Costa Mesa, California on Tuesday, July 5, 2016. See, **Exhibit P**. Plaintiff's subpoena commanded TIS to produce a wide range of documents (and trade secret information) allegedly related to the underlying litigation. Some examples are:

   a. Produce any documents relating to the camera resolution of any ScanPro.

   b. Produce any documents relating to the camera resolution of any ViewScan.

   c. Produce all promotional materials and documents used by you that specifically references e-Image or any Scan Pro.

   d. Produce documents relating to any sales made by TIS of any ViewScan since January 1, 2013.

   e. Produce any documents relating to any customer praise of the ScanPro or ViewScan.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                                    14

f. Produce any documents relating to e-Image's, ST Imaging's or any other entity's market share for sales of microfilm scanners.

g. Produce any documents relating to industry sales data of microfilm scanners.

See, **Exhibit E** at P. 8-9.

TIS estimates the Subpoena as it is currently phrased will require Terri Currier to review between 7,000 -10,000 pages of documentation covering matters that pre-date the events leading to the underlying litigation between E-IMAGIMG and ST IMAGING.  Terri Currier estimates this intensive document search will take 30-40 hours to complete. See, **Exhibit P.**  Plaintiff's subpoena commanded TIS to produce the above documents (and many others) to US Legal Support, 575 Anton Boulevard, Suite 400, Costa Mesa, California, 92626, "no later than July 11, 2016." Id. at P. 1.

The Subpoena commanded TIS' PMK appear at the above address to be deposed on August 11, 2016, at 9:00 a.m. E-IMAGEDATA seeks to depose TIS's PMK on the following topics allegedly related to the underlying litigation between E-IMAGEDATA and ST IMAGING:

- Documents produced in response to this Subpoena;

- Communications with third parties regarding e-Image or e-Image's ScanPro product line;

- The market demand for products such as the ST ViewScan and the Scan Pro, and product features driving that demand;

- Communications with customers or potential costumers regarding St Imaging's ViewScan Products;

- The sales process associated with the sale of a ST ViewScan, including communications with customers, communication with ST Imaging, profit margins associated with the sale, costs associated with the sale and documents associated with the sale.[6]

See, **Exhibit E** at P 5-6.

/ / /

---

[6] The above topics of examination reflect only few of the total topics Plaintiff seeks to examine TIS' PMK about.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   On July 8, 2016, TIS retained the undersigned counsel to represent them

2   regarding the Subpoena's document production and PMK deposition.   Rebecca

3   Lindstrom, Esq., counsel for TIS located in Chicago (licensed in Wisconsin) conducted

4   numerous conversations with Plaintiff's counsel from July 8 to July 22, 2106, attempting

5   to narrow the scope of the Subpoena.  See, Communications between TIS' counsel and

6   Plaintiff's counsel, attached as **Exhibits G, H, I** and **J**.

7   On July 22, 2016, TIS' counsel (Affiant) and Plaintiff's counsel conducted one last

8   teleconference regarding the Subpoena's improper scope and TIS' PMK deposition. See,

9   **Exhibit K**.  TIS' counsel <u>again</u> advised Plaintiff's counsel about the difficulty obtaining

10  responsive documents given Clifford's sudden passing.   <u>Id</u>.   TIS' counsel advised

11  Plaintiff's counsel they would be willing to produce certain documents responsive to the

12  Subpoena provided TIS' counsel could redact customer information, potential customer

13  information, pricing information, profit information, etc.  Plaintiff's counsel rejected TIS'

14  counsel's proposal, but suggested a wiliness to grant TIS more time (without providing

15  any concrete dates) to respond to the Subpoena largely as issued. <u>Id</u>. TIS and Plaintiff's

16  counsel agreed they had reached impasse and judicial intervention was necessary. <u>Id</u>.

17  TIS' counsel documented the conversation with Plaintiff's counsel and e-mailed

18  Plaintiff's counsel a brief recitation of their conversation.  <u>Id</u>. Plaintiff's counsel disagreed

19  with TIS' counsel characterization of their conversation.   See, **Exhibit L**.   Plaintiff's

20  counsel advised <u>for the first time</u> that they would be willing to grant TIS' counsel an

21  extension for the document production and the PMK deposition until November.

22  Plaintiff's counsel also advised TIS' counsel that Plaintiff was not seeking customer lists,

23  only customer and sales information that fell within the scope of the Subpoena.  Plaintiff's

24  counsel also offered to consider adding language to the protective order in the underlying

25  litigation for TIS' protection. <u>Id</u>.

26  TIS' counsel responded to Plaintiff's "re-characterization" of their communication a

27  few hours later.  TIS's counsel noted that Plaintiff's last communication was Plaintiff's first

28  suggestion that TIS' counsel could have until November to produce documents before

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                    16

responding to the Subpoena and giving deposition testimony.  See, **Exhibit M**.  TIS' counsel also advised Plaintiff's counsel that if TIS provided un-redacted customer information/potential customer information, E-IMAGEDATA (TIS' competitor) would be able to "recreate" TIS' confidential customer/pricing/profit information.   TIS' counsel advised Plaintiff's counsel that Plaintiff's wiliness to provide additional protective order language did not address these problems in Plaintiff's Subpoena.  Lastly, TIS' counsel advised Plaintiff's counsel that Plaintiff's refusal to narrow the scope of the Subpoena necessitated judicial intervention on a number of issues beyond just trade secret concerns.  Id.

The Subpoena is improper for a host of reasons discussed in more detail below. Plaintiff should not be permitted to force a corporate officer to expend significant time and resources to produce confidential documents that pre-date relevant matters in the underlying litigation, when they could get the information from ST IMAGING (the Defendant) or another reseller (Plaintiff has issued the exact same subpoena or one substantial similar to three other ST IMAGING resellers).  Plaintiff should not be allowed to compel Terri Currier to attend a deposition in Costa Mesa, California (more than twice the permissible distance under FRCP 45) regarding irrelevant, overbroad and trade secret information when she does not regularly conduct business within 100 miles of Costa Mesa.  See, **Exhibit P**.  Consequently, this Court should quash the subpoena or, at a minimum, significantly modify its scope and change the location to Las Vegas, Nevada.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3) governs motions to quash or modify a subpoena.  Once a recipient of a subpoena has moved to quash the subpoena, it may refuse to comply with the subpoena until the motion to quash is decided. See, Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 (9th Cir. 1983).  FRCP 45(d)(3)(A) identifies circumstances in which a Court is required to grant a motion to quash (or modify) a subpoena **(in the district where compliance is required)** including when:

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

(1) The Subpoena fails to allow a reasonable time to comply;

(2) The Subpoena requires a person to comply beyond the geographical limits specified in Rule 45(c) [100 miles];

(3) The Subpoena requires disclosure of privileged or other protected matters, if no exception or waiver applies; or

(4) The Subpoena subjects a person to undue burden.

FRCP 45(d)(3)(A).

FRCP 45(d)(3)(A) contrasts with Rule 45(d)(3)(B), which identifies circumstances were a subpoena *should be* quashed or modified including when:

(1) The Subpoena requires disclosing a trade secret or other confidential research, development, or commercial information.

FRCP 45(d)(3)(A)(i).

FRCP 45(d)(3)(C) describes circumstances where the court may order appearance or production under specified conditions when <u>the serving party</u>:

(1) Shows a substantial need for the testimony or material that <u>cannot be otherwise met without undue hardship</u>; **and**

(2) Ensures that the subpoenaed person will be reasonably compensated.

FRCP 45(d)(3)(C) (emphasis added).

Federal Rule of Civil Procedure 26 is also relevant in the instant matter because it defines the permissible scope of discovery, and a Rule 45 subpoena is subject to that same scope.   <u>See</u>, Fed. R. Civ. P. 45(d)(1) advisory committee's note to the 1970 Amendment; <u>see also</u>, <u>e.g.</u>, <u>Transcor, Inc. v. Furney Charters, Inc.</u>, 212 F.R.D. 588, 591 (D. Kan. 2003) ("[i]n considering a motion to quash a subpoena duces tecum, the court must also consider whether the subpoena "is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b)").

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding "any non-privileged matter that is relevant to any party's claim or defense." <u>See</u>, Fed. R. Civ. P. 26(b)(1).  Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1

in the action." Id. This traditional "relevance" standard, however, does not apply to nonparties. See, Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted . . . the 'necessary' restriction may be broader when a nonparty is the target of discovery."); see also, e.g., Laxalt v. McClatchy, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery . . . require a stronger showing of relevance than for simple party discovery."). To obtain discovery from a nonparty, a party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure. See, e.g., Slater Steel, Inc. v. Vac-Air Alloys Corp., 107 F.R.D. 246, 248 (W.D.N.Y. 1985) (granting a nonparty's motion because the nonparty demonstrated that the information sought was a highly confidential commercial matter and that disclosure would cause it significant harm).

FRCP 26(b)(2)(C) also requires courts to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the burden or expense of the proposed discovery outweighs its likely benefit, considering . . . the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii). Knowledgeable

III.   **LEGAL ARGUMENT**

   A. Plaintiff's Subpoena Commanding TIS' PERSON MOST KNOWLEDGEABLE Deposition Should be Quashed Pursuant to FRCP 45(C) Because Costa Mesa, California is More than 100 Miles From TIS and Terri Currier Does Not Personally Regularly Conduct Business Within 100 Miles of Costa Mesa, California

The pertinent part of Rule 45(c) provides that a subpoena may command a person to appear for a deposition or to produce documents within 100 miles of where the person resides, is employed or regularly transacts business in person. See, FRCP 45(c) (emphasis added). Costa Mesa, California is approximately 264 miles away from Las Vegas, Nevada. TIS resides in Las Vegas, Nevada. TIS' only remaining corporate officer and PMK Terri Currier resides in Las Vegas, Nevada. Terri Currier's does regularly

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1

19

1   conduct business, in person, within 100 miles of Costa Mesa, California.   Compliance

2   with the Subpoena as issued would improperly require Terri Currier TIS' only cooperate

3   officer to travel more than twice the permissible distance under FRCP 45(c) to appear for

4   a   deposition   that   improperly   seeks   irrelevant   and   trade   secret   information.[7]

5   Consequently, the Court should quash the Subpoena commanding Terri Currier to appear

6   in Costa Mesa, California for TIS' PMK deposition.

7   **B.   Plaintiff's Subpoena Commanding TIS' PMK Deposition Should be**
    **Quashed Because it Seeks Irrelevant and Trade Secret Information**

8

9   The   Federal   Rules   of   Civil   Procedure   generally   allow   for   broad   discovery,

10   authorizing   parties   to   obtain   discovery   regarding   "any   non-privileged   matter   that   is

11   relevant to any party's claim or defense."   See, Fed. R. Civ. P. 26(b)(1) (emphasis

12   added).   The traditional "relevance" standard, however, does not apply to nonparties.

13   See, Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir. 1980). To

14   obtain **non-privileged** discovery from a nonparty, the party must demonstrate that its need

15   for discovery outweighs the nonparty's interest in nondisclosure. See, e.g., Slater Steel,

16   Inc. v. Vac-Air Alloys Corp., 107 F.R.D. 246, 248 (W.D.N.Y. 1985).   FRCP 26(b) also

17   requires courts to limit discovery where "the discovery sought is unreasonably cumulative

18   or duplicative, or can be obtained from some other source that is more convenient, less

19   burdensome, or less expensive" and where "the burden or expense of the proposed

20   discovery outweighs its likely benefit, considering . . . the importance of discovery in

21   resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

22   The underlying litigation between E IMAGING and ST IMAGING involves claims

23   about each others products' capabilities and related advertising activities.   See, **Exhibits**

24   **N and O**. Plaintiff, however, seeks TIS' PMK deposition testimony on:

25   / / /

26

-----

27   [7] The below "topics of examination" represent a sample of the improper nature of the Subpoena's scope
28   TIS' PMK'S deposition.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

- Documents produce in response to this Subpoena;
- Communication with third parties regarding e-Image or e-Image's ScanPro product line;
- The market demand for products such as the ST ViewScan and the Scan Pro, and product features driving that demand;
- Communication with customers or potential costumers regarding ST Imaging's ViewScan Products;
- he sales process associated with the sale of a ST ViewScan, including communications with customers, communication with ST Imaging, profit margins associated with the sale, costs associated with the scale and documents associated with the sale.

See, **Exhibit E** at P. 5-6.

TIS has been in business since 2001. See, **Exhibit P.** E-IMAGEDATA'S ScanPro product line has been around since 2003. See, **Exhibits N** and **O.** TIS has sold ST IMAGING'S ViewScan products since 2004. See **Exhibit P.** Plaintiff's deposition request seeks information that pre-dates E-IMAGEDATA'S 26 megapixel claim is irrelevant to the underlying litigation between E-IMAGEDATA and ST IMAGING, and requires disclosure of confidential customer and sales and profit information to TIS' competitor. Moreover, TIS's internal market research regarding market demand, sales and profit information and "product features driving that demand" are entirely irrelevant and inappropriate to discuss with TIS' competitor given the nature of the underlying dispute.

E-IMAGEDATA and ST IMAGING likely have extensive documentation tracking product demand, market research and provide/sales margins. This Court should quash the Subpoena seeking to depose TIS' PMK in Costa Mesa, California. If this Court is not inclined to quash Plaintiff's improper Subpoena, this Court should significantly limit its scope to relevant issues in the underlying litigation provided Plaintiff has demonstrated the need for TIS' disclosure outweighs TIS need for privacy and Plaintiff cannot reasonably obtain the information from another more reasonable non-duplicative source. TIS does not believe Plaintiff will be able to meet their burden, as information regarding the advertising at issue can be obtain from ST IMAGING and Plaintiff has sent three (3) identical (or substantially similar) Subpoenas to three (3) other ST IMAGING resellers.

C. **The Subpoena's Document Production Request Should be Quashed or Modified Because its Overly Broad, Unduly Burdensome and Improperly Seeks Trade Secret Information**

The permissible breadth of a subpoena duces tecum is measured by the scope of the problem under investigation.  See, People v Allen, 103 NE2d 92 (1951), cert. den. (1952) 344 US 815, 97 L Ed 635, 73 S Ct 9.  Whether a subpoena imposes an undue burden on a witness requires a case-specific analysis.  See, American Elec. Power Co. v United States 191 FRD 132, 85 AFTR 2d 345 (1999, SD Ohio).  FRCP 45(c), which delineates circumstances justifying quashing subpoenas, was not intended to diminish rights conferred by FRCP 27-37; accordingly, factors to be considered in an undue burden analysis include relevance, the need of the party for the documents, whether the request is cumulative and duplicative, the time and expense required to comply with the subpoena, and the importance of the issues at stake in litigation.  See, Linder v Calero-Portocarrero 183 FRD 314 (1998, DC Dist Col), affrd (2001, App DC) 346 US App DC 117, 251 F3d 178, 49 FR Serv 3d 757.  Courts are required to balance the need for discovery against the burden imposed on person ordered to produce documents, **and the status of a person as a nonparty is factor that weighs against disclosure**.  See, American Elec. Power Co. at 191 FRD 132, 85 AFTR 2d 345 (1999, SD Ohio) (emphasis added).

1. **Plaintiff's Subpoena's Should be Quashed or Modified Because the Documents Requested are Impermissibly Overly Broad and Unduly Burdensome**

The Court has broad discretion in determining whether discovery is burdensome and/or oppressive. See, Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988). The Court may make any order which justice requires to protect a party or person from undue burden, oppression or expense. See, United States v. Columbia Broadcasting System, Inc., 666 F.2d 364, 369 (9th Cir.), cert. denied 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982)"; see also, Diamond State Ins. Co. v. Rebel Oil Co., 157 F.R.D. 691, 696 (D. Nev. 1994).  Requests are over broad when they used language so broad it is impossible to determine what amongst numerous documents fall within the scope of the requests. See, Krause v. Nevada Mut. Ins. Co., No. 2:12-CV-00342-JCM, 2014 WL 496936, at *5

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                    22

(D. Nev. Feb. 6, 2014) aff'd, No. 2:12-CV-342 JCM CWH, 2014 WL 3592655 (D. Nev. July 21, 2014) (citing Dauska v. Green Bay Packaging Inc., 291 F.R.D. 251 (E.D. Wisc. 2013)).

The underlying litigation between E IMAGING and ST IMAGING involves claims about their equipment capabilities and related advertising materials. Plaintiff issued a Subpoena to TIS seeking:

> a. Produce any documents **relating to** the camera resolution of any ScanPro.
>
> b. Produce any documents **relating to** the camera resolution of any ViewScan.
>
> c. Produce **all promotional materials** and documents used by You that specifically references e-Image or any Scan Pro.
>
> d. Produce documents **relating to any sales** made by TIS of any ViewScan since January 1, 2013.
>
> e. Produce any documents **relating to any customer praise** of the ScanPro or ViewScan.
>
> f. Produce any documents **relating to e-Image's, ST Imaging's or any other entity's market share** for sales of microfilm scanners.
>
> g. Produce any documents **relating to industry sales data** of microfilm scanners.

See, **Exhibit E** at P. 5-6 (emphasis added).

The Subpoena's many requests seek irrelevant information (documents that pre-date matters disputed in the underlying litigation) and are overly broad and unduly burdensome on its face. The underlying litigation involves claims of alleged false statements/advertising between E-IMAGEDATA and ST IMAGING. Plaintiff's request for industry sales data and TIS' internal market share analysis have no bearing on the instant matter. More importantly, the documents can be obtained likely be obtained from ST IMAGING, the Defendant. Consequently this Court should quash Plaintiff's many improper requests for TIS documents.

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

The Court should also quash or narrow the scope of Plaintiff's many document requests because they are unlimited in time and scope and unduly burdensome. Plaintiff's request for documents "related to" broad categories of general concepts (e.g. "camera resolution") are overly broad and unduly burden some on their face. Plaintiff's request for TIS documents (as issued) places an undue burden on TIS.

TIS has been selling ViewScan products since 2004. E-IMAGEDATA has produced its ScanPro line since 2003. Complying with the Subpoena's unlimited request as issued would involve Terri Currier's review of 7,000-10,000 pages of documentation requiring 30-40 hours of review time. See, **Exhibit P**. Plaintiff's demand that TIS' only corporate representative invest this amount of time to comb through thousands of pages of documents covering more than 10 years of documentation is unduly burdensome and oppressive. Consequently, this Court should quash or significantly narrow the Subpoena's scope.

### 2. Plaintiff's Subpoena's Should be Quashed or Modified Because it Impermissibly Seeks Confidential, Trade Secret Information

Trade secrets are governed by state specific law. Nevada and Wisconsin's definitions of trade secrets are essentially identical, as both states have enacted the Uniform Trade Secrets Act and regard the Restatement of Torts as persuasive authority on the issue.[8] NRS 600A.030(5)(a)-(b) defines "trade secrets." Under Nevada Law, trade secrets are:

> [i]nformation, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and

---

[8] See, Wis. Stat §134.90; see also, NRS 600A.030(5)(a)-(b), Am. Nat'l Prop. & Cas. Co. v. Brass, 305 Wis. 2d 655 (Ct. App. 2007).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

2

3   See, NRS 600A.030(5)(a)-(b).

4   Whether information is "trade secret" is generally a question of fact. See, Frantz v.

5   Johnson, 116 Nev. 455, 466, 999 P.2d 351, 358 (2000).  Factors to consider typically

6   include:(1) the extent to which the information is known outside of the business and the

7   ease or difficulty with which the acquired information could be properly acquired by

8   others; (2) whether the information was confidential or secret; (3) the extent and manner

9   in which the employer guarded the secrecy of the information; and (4) the former

10  employee's knowledge of customer's buying habits and other customer data and whether

11  this information is known by the employer's competitors.  See, Finkel v. Cashman Prof'l,

12  Inc., 270 P.3d 1259, 1264 (Nev. 2012).  When analyzing whether to order disclosure of

13  trade secret information the Court, using its common sense, must balance one party's

14  legitimate desire for discovery with other party's legitimate fear of financial ruin arising out

15  of that disclosure. See, Mycogen Plant Science v Monsanto Co. 164 FRD 623 (1996, ED

16  Pa) (emphasis added).

17  This underlying litigation involves accusation of false statements and advertising

18  between two competing microfilm scanner manufactures.  But in the Subpoena, Plaintiff

19  seeks TIS' confidential customer names; potential customer names; focused

20  communications to current and potential customers; internal market research; sales/profit

21  information; etc.  See, **Exhibit E**.   This information falls squarely within

22  Nevada/Wisconsin's definition of trade secret information because it has economic value,

23  it is not generally available and TIS has sought to protect this information from others.

24  The Court should preclude disclosure of TIS' trade secret information as TIS' interest in

25  disclosure far outweighs Plaintiff's need for the information/documents to support their

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                    25

1    case.[9]

2    As a reseller, customer information, potential customer information, profit/sales

3    information and market research is TIS' economic "life blood."   TIS has gone through

4    great measures to keep this information confidential.   TIS does not publish information

5    about its clients and does not discuss profit/sales information, marketing strategy and

6    ways to acquire new clients with others outside the company.   The Subpoena (issued by

7    TIS' competitor) is the only such subpoena TIS has ever received for trade secret and

8    protective information and strongly objects to producing its confidential/trade secret

9    information.   Plaintiff's need for TIS' confidential information does not outweigh TIS fear of

10   (and likely) financial ruin arising out of disclosing these documents.   Consequently, the

11   Court should quash Plaintiff's Subpoena.

12   IV.   **CONCLUSION**

13   Predicated upon the foregoing, non-party TOTAL IMAGING SOLUTIONS, LLC.

14   respectfully requests that the Court quash the Subpoena issued by E-IMAGEDATA.

15   DATED this 25 day of July, 2016

16                                 Respectfully Submitted,

17                                 LEWIS BRISBOIS BISGAARD & SMITH LLP

18

19   By

20                                 JOSH COLE AICKLEN
                                   Nevada Bar No. 007254

21                                 BRANDON D. WRIGHT
                                   Nevada Bar No. 013286

22                                 6385 S. Rainbow Boulevard, Suite 600
                                   Las Vegas, Nevada 89118

23                                 Tel. 702.893.3383
                                   Attorneys for Non-Party
                                   TOTAL IMAGING SOLUTIONS, LLC.

24

25

26

27   [9] TIS again notes Plaintiff issued essentially the same Subpoena at issue to three (3) other ST IMAGING
     resellers rendering TIS' likely production duplicative.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                      26

CERTIFICATE OF SERVICE

I hereby certify that, on July 25th, 2016, I electronically filed **NON-PARTY TOTAL IMAGING SOLUTIONS, LLC'S. MOTION TO QUASH SUBPOENA SEEKING DOCUMENTS AND PMK DEPOSITION OR, IN THE ALTERNATIVE, TO MODIFY SUBPOENA'S SCOPE** with the Clerk of Court using the CM/ECF system which will automatically send E-Mail notification of such filing to the following attorneys of record:

MATHEW J. Duchemin
Wisconsin State Bar No. 1027594
QUARLES & BRADY LLP
33 East Main St. Suite 900
Madison, WI 53703
P. 608-251-500

DAVID MUTH
Wisconsin State Bar No. 1027027
JOHANNA M. WILBERT
Wisconsin State Bar No. 1060853
johanna.wilbert@quarles.com
QUARLES & BRADY LLP
411 East Wisconsin Ave, Suite 2350
Milwaukee, WI 53202-4497
P. 414-277-500
Attorneys for Plaintiff
e-ImageData Corporation

Stephen J. O'Neil
Stephen.oneil@klgates.com
IL Bar Number 3127564
Dawn L. Johnson
IL Bar Number 625206
Dawn.johnson@kgates.com
Kevin J. Butler
IL Bar Number 6310642
Kevin.butler@kgates.com
K&L Gates LLP
70 W. Madison, Suite 3100
Chicago, Illinois 60602
TP. (312) 372-1121
Attorneys for Defendant/Counterplaintiff
DIGITAL CHECK CORP. d/b/a
ST IMAGING

By _____
An Employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4844-7406-1365.1                                            27